UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                    :

MERRILL CROMWELL-GIBBS,          :
                                    :
                     Plaintiff,   :
                                    :
                     v.          :
                                    :
STAYBRIDGE SUITE TIMES SQUARE and  :
SEEN KIE CHIEW,             :
                                    :
                    Defendants. :
                                    :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 20, 2017___

16 Civ. 5169 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

Plaintiff Merrill Cromwell-Gibbs, an African-American woman, is the former Director of Housekeeping at Defendant Staybridge Suites Times Square ("Staybridge").[1]  In 2015, one of Plaintiff's former co-workers, Nicole Pacheco, sent a group e-mail attaching a video of Staybridge employees performing a skit that contained racial epithets.  After Plaintiff expressed her offense at the video in a "reply all" e-mail, Staybridge's General Manager, Defendant Seen Kie Chiew ("Chiew," and together with Staybridge, "Defendants"), admonished Plaintiff for publicly airing her grievances.  Chiew explained to Plaintiff that he had privately reprimanded Pacheco, and asked that Plaintiff apologize to Pacheco for calling her out.  When Plaintiff refused to apologize, Chiew ceased exchanging pleasantries with Plaintiff at work.

---

[1]     In his Complaint and Amended Complaint, Plaintiff erroneously refers to Staybridge as "Staybridge Suite Times Square," and this error has been replicated in the case's docket.  The Clerk of Court is directed to amend this case's caption as reflected above.

In 2016, Plaintiff sued Defendants, arguing that they created a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law. §§ 290 to 301 (the "NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 to 8-131 (the "NYCHRL"). Defendants have moved to dismiss Plaintiff's Amended Complaint (the operative complaint in this case) under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court grants Defendants' motion.

## BACKGROUND[2]

### A. Factual Background

Staybridge is a hotel in New York City. (AC ¶ 7). Plaintiff worked at Staybridge from October 2012 until January 2016, when she retired. (*Id.* at

---

[2] This Opinion draws on facts from two sources. The first is Plaintiff's Amended Complaint ("AC" (Dkt. #12)), and for the purposes of this Opinion the Court assumes that the allegations therein are true. *E.g.*, *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009).

The second is the e-mail chain that gave rise to Plaintiff's lawsuit ("E-mails" (Dkt. #16-6)). The e-mail chain is attached as an exhibit to a document Defendants filed: Attorney Siobhan Healy's Affirmation in Support of Motion to Dismiss. (*See* Dkt. #16). The Court may consider the e-mail chain in deciding this Opinion because the Amended Complaint incorporates the e-mail chain by reference. *See, e.g.*, *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (limiting universe of materials district courts may consider in assessing sufficiency of a complaint to "facts stated on the face of the complaint, ... documents appended to the complaint or incorporated in the complaint by reference, and ... matters of which judicial notice may be taken." (quoting *Concord Assocs., L.P.* v. *Entm't Props. Tr.,* 817 F.3d 46, 51 n.2 (2d Cir. 2016))).

"To be incorporated by reference, the Complaint must make a clear, definite, and substantial reference to the document[]." *White* v. *City of N.Y.*, 206 F. Supp. 3d 920, 929 (S.D.N.Y. 2016) (quoting *Helprin* v. *Harcourt, Inc.*, 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003)); *accord Hagan* v. *City of N.Y.*, 39 F. Supp. 3d 481, 493 n.5 (S.D.N.Y. 2014). Just so here. The Amended Complaint contains nine paragraphs of factual allegations. (AC ¶¶ 11-19). Six of those paragraphs make direct reference to the e-mail chain, the contents of the e-mails exchanged, and/or the contents of the video Pacheco attached to her e-mail that initiated the chain. (*Id.* at ¶¶ 13-18). Put simply, the Amended Complaint clearly, definitely, and substantially references the e-mail chain. And in turn, the Court deems the e-mail chain incorporated by reference into the Amended Complaint. *See, e.g.*, *DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 112 (2d

¶ 11). At the time of the events giving rise to this lawsuit, Plaintiff was

Staybridge's Director of Housekeeping, and Pacheco was Staybridge's Front

Desk Manager. (*Id.* at ¶ 12; E-mails 2).

This case began with an ill-advised workplace e-mail. On June 13,

2015 — and evidently as part of a team-building exercise called "Celebrate

Service Week" — Pacheco sent a group e-mail to "13 or 14" Staybridge

employees, "including other management employees." (AC ¶¶ 13-14; E-mails

1-2). Both Plaintiff and Chiew received the e-mail, attached to which was a

video of a group of Staybridge employees performing a musical skit. (AC ¶ 13;

E-mails 2). During the skit, the employees in the video — including at least

one "management level employee" — sang a song that included the word

"nigger." (AC ¶¶ 14, 16).[3]

---

Cir. 2010) (district court correctly determined that complaint incorporated by reference e-mails attached as exhibits to a declaration filed by defense counsel in support of Rule 12(b)(6) motion to dismiss, where plaintiff "referred in her complaint to [the] e-mails" but did not attach them as exhibits to her complaint); *Worldwide Servs., Ltd.* v. *Bombardier Aerospace Corp.*, No. 14 Civ. 7343 (ER), 2015 WL 5671724, at *8 (S.D.N.Y. Sept. 22, 2015) (deeming eight documents, including four e-mails, incorporated by reference in complaint, because "documents [were] clearly referenced by the [c]omplaint" and "highly relevant").

Even when a complaint incorporates a document by reference, a court adjudicating a motion to dismiss may consider that document only if "there is no dispute regarding [the document's] authenticity, accuracy[,] or relevance." *In re PetroChina Co. Ltd. Sec. Litig.*, 120 F. Supp. 3d 340, 354 (S.D.N.Y. 2015), *aff'd sub nom. Klein* v. *PetroChina Co.*, 644 F. App'x 13, 14 (2d Cir. 2016) (summary order); *accord Faulkner* v. *Beer*, 463 F.3d 130, 134 (2d Cir. 2006). Such is the case here. In her opposition submissions, Plaintiff raised no objection to Defendants' introduction of, and reliance on, the e-mail chain. The Court, moreover, is confident that the e-mail chain is authentic, accurate, and relevant: The e-mail chain is the *sine qua non* of the Amended Complaint, and the Amended Complaint's allegations about the e-mail chain align with the content of the e-mails themselves. Accordingly, the Court will consider the e-mail chain when evaluating the sufficiency of the Amended Complaint.

[3]     It is unclear from the Amended Complaint whether the participants in the skit were singing an existing song that contained such lyrics, a parody of an existing song, or an entirely original musical composition.

"Plaintiff was highly offended by the video[.]" (AC ¶ 15).  On the morning

of June 16, 2015, she "replied all" to Pacheco's e-mail, writing:

> It took me a while to be fully sure what I was hearing in
> one of the videos was really what I was hearing.  It is all
> right to have fun, but we have to be very conscious not
> to offend anyone especially as managers; because we
> need to be examples to our employees.  The language is
> offensive and should not be part of our vocabulary.

(E-mails 1; AC ¶ 15).

Chiew responded to Plaintiff's e-mail on the evening of June 16.

(AC ¶ 17; E-mails 1).  Unlike Plaintiff, Chiew did not reply to every

recipient of Pacheco's first e-mail — he wrote directly to Plaintiff, copying

one other Staybridge employee.  (E-mails 1).  Chiew "admonish[ed]

Plaintiff for sending out the e[-]mail in which Plaintiff voiced her objection

to the video." (AC ¶ 17).  Chiew wrote:  "I expected nothing less than

respectful/conscious as you've indicated to have 'replied all.'" (E-mails

1).  And Chiew added that he "expect[ed]" Plaintiff to send an e-mail

"publically apologiz[ing] to" Pacheco by "tomorrow morning." (*Id.*).  Chiew

concluded his e-mail by explaining to Plaintiff that Pacheco had already

been disciplined for her conduct; Chiew and another Staybridge

employee had "spoke[n] directly to" Pacheco on June 13 (the day Pacheco

e-mailed the video).  (*Id.*).

Plaintiff refused to apologize.  (AC ¶ 18).  She responded to Chiew's

e-mail on June 17, 2015, writing that she had "replied all" precisely

because Pacheco had sent the video to a group of Staybridge employees.

(E-mails 1).  "[M]y response," Plaintiff wrote, "was to everyone so that

they are all aware that this type of language is offensive and racist and should not be used[,] especially in the workplace." (*Id.*). Plaintiff reminded Chiew that she "ha[d] employees that are African American" — and she asked Chiew to consider how those employees might have reacted to the video. (*Id.*). Apologizing for replying to Pacheco's e-mail, Plaintiff wrote, would "go[] against [Plaintiff's] belief and standard." (*Id.*). The Amended Complaint discloses no further communications between Plaintiff and Chiew on this subject.

Thereafter, according to Plaintiff, Chiew "refused to speak to Plaintiff unless he had to." (AC ¶ 19). Plaintiff does not contend that Chiew's work-related conversations with her were testy or somehow different in kind; rather, Chiew no longer said "good morning" or "good night" to Plaintiff. (*Id.*).

Plaintiff retired from Staybridge in January 2016. (AC ¶ 11). Plaintiff does not allege that her retirement was motivated by the incident that gave rise to this lawsuit. (*See* Pl. Opp. 1 ("Plaintiff has not maintained that she left her position other than voluntarily.")).

**B. Procedural Background**

Plaintiff filed her initial Complaint on June 29, 2016. (Dkt. #1). After Defendants filed a letter announcing their intention to move to dismiss the Complaint (Dkt. #6), the Court held a pre-motion conference on October 27, 2016 (10/27/16 Minute Entry). Pursuant to that conference, Plaintiff filed her Amended Complaint — the operative complaint in this case — on November 14,

5

2016. (Dkt. #12). Defendants moved to dismiss the Amended Complaint on December 9, 2016. (Dkt. #15-17). Plaintiff opposed the motion on January 10, 2017 (Dkt. #18), and briefing concluded when Defendants filed their reply on January 23, 2017 (Dkt. #19).

## DISCUSSION

Plaintiff alleges that Defendants created a hostile work environment in violation of Title VII, the NYSHRL, and the NYCHRL. The events giving rise to those claims, as presented in the Amended Complaint, are few. At this stage, Plaintiff's suit presents a narrow question: Does the Amended Complaint allege plausibly that Pacheco's group e-mail, Chiew's e-mail to Plaintiff, and Chiew's reaction when Plaintiff refused to apologize to Pacheco, fostered an actionable hostile work environment?

Even accepting all of the Amended Complaint's allegations as true, the Court concludes that the answer to this question is "no." This is so even though the video Pacheco circulated was perceived (not incorrectly) by Plaintiff to be racist and offensive. And this is so even though Plaintiff was entitled to express publicly her offense at the video. Ultimately, and as discussed herein, the Amended Complaint falls far short of stating a cognizable hostile work environment claim under Title VII. That conclusion eliminates Plaintiff's lone federal claim from this suit, and the Court declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims.

The rest of this Opinion proceeds in two parts. First, the Court will address why Plaintiff has failed to state a claim for relief under Title VII.

6

Second, the Court will explain why it is declining supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims.

## A. Plaintiff Has Not Alleged a Plausible Hostile Work Environment Claim Under Title VII

### 1. Applicable Law

Two well-settled, interlocking legal principles guide this segment of the Court's analysis. The first is the pleading standard a complaint must satisfy to survive a Rule 12(b)(6) motion to dismiss. The second is the showing a plaintiff must make to state a cognizable Title VII hostile work environment claim.

*Rule 12(b)(6)*: "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* And "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief,'" and therefore cannot withstand a motion to dismiss. *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557).

*Title VII*: "To establish a hostile work environment under Title VII, … a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

environment.'" *Littlejohn* v. *City of N.Y.*, 795 F.3d 297, 320-21 (2d Cir. 2015) (quoting *Harris* v. *Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  "This standard has both objective and subjective components:  [T]he conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive."  *Id.* at 321 (quoting *Raspardo* v. *Carlone*, 770 F.3d 97, 114 (2d Cir. 2014)).  The Second Circuit has explained that a prima facie Title VII hostile work environment claim has three elements — "a plaintiff must plead facts that would tend to show that the complained of conduct":

> [i] [I]s objectively severe or pervasive — that is, ... creates an environment that a reasonable person would find hostile or abusive; [ii] creates an environment that the plaintiff subjectively perceives as hostile or abusive; and [iii] creates such an environment because of the plaintiff's [protected characteristic].

*Patane* v. *Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks and citation omitted).

But to survive a Rule 12(b)(6) motion to dismiss, a Title VII complaint does not need to establish every element of a prima facie hostile work environment claim.  "At the motion to dismiss stage, ... 'a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment ... of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'"  *Cowan* v. *City of Mount Vernon*, No. 14 Civ. 8871 (KMK), 2017 WL 1169667, at *4 (S.D.N.Y. Mar. 28, 2017) (internal quotation marks omitted) (quoting *Patane*, 508 F.3d at

8

113). "As a practical matter, however, while a plaintiff need not allege specific facts establishing a prima facie case of discrimination in order to withstand a motion to dismiss, the elements of a prima facie case often provide an outline of what is necessary to render a plaintiff's claims for relief plausible." *Carter* v. *Verizon*, No. 13 Civ. 7579 (KPF), 2015 WL 247344, at *5 (S.D.N.Y. Jan. 20, 2015); *see, e.g.*, *Johnson* v. *J. Walter Thompson U.S.A., LLC*, — F. Supp. 3d —, No. 16 Civ. 1805 (JPO), 2016 WL 7217847, at *6-9 (S.D.N.Y. Dec. 13, 2016) (considering all three factors of a prima facie Title VII hostile work environment claim in order to determine whether complaint survived motion to dismiss). In any case, "[i]n evaluating whether the circumstances" set forth in a complaint "suffice to find a hostile work environment, the [Second Circuit] has 'repeatedly cautioned against setting the bar too high.'" *Lewis* v. *Roosevelt Island Operating Corp.*, — F. Supp. 3d —, No. 16 Civ. 3071 (ALC), 2017 WL 1169647, at *6 (S.D.N.Y. Mar. 28, 2017) (quoting *Patane*, 508 F.3d at 113).

At bottom, a court tasked with determining whether a work environment was actionably hostile "must consider the totality of the circumstances." *Littlejohn*, 985 F.3d at 321. Factors relevant to this analysis include: "[i] the frequency of the discriminatory conduct; [ii] its severity; [iii] whether it is threatening and humiliating, or a mere offensive utterance; and [iv] 'whether it unreasonably interferes with an employee's work performance.'" *George* v. *Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 452 (S.D.N.Y. 2016) (internal quotation marks omitted) (quoting *Patane*, 508 F.3d at 113). This analysis is "highly context-dependent," and courts assessing a workplace's hostility

"should evaluate the facts holistically rather than 'view individual incidents in isolation' or in a 'piecemeal fashion.'" *Johnson*, 2016 WL 7217847, at *5-6 (quoting *Redd* v. *N.Y. Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012)).

"Generally, unless an incident of harassment is sufficiently severe, 'incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Gorzynski* v. *JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (quoting *Alfano* v. *Costello,* 294 F.3d 365, 374 (2d Cir. 2002)). But "a single act can create a hostile work environment if it in fact works a transformation of the plaintiff's workplace." *Green* v. *Jacob & Co. Watches, Inc.*, — F. Supp. 3d —, No. 15 Civ. 3611 (PAC), 2017 WL 1208596, at *7 (S.D.N.Y. Mar. 31, 2017) (quoting *Feingold* v. *New York*, 366 F.3d 138, 150 (2d Cir. 2004)). "[T]hat single act must be 'extraordinarily severe'" to rise to the level of a Title VII violation. *Id.* (quoting *Alfano*, 294 F.3d at 374).

### 2. Analysis

Even with a minimal pleading burden in her favor, Plaintiff has not stated a claim for relief under Title VII. Nothing in the Amended Complaint suggests that a reasonable person, after receiving Pacheco's e-mail and being admonished by Chiew, "would find the conditions of her employment altered for the worse." *Cowan*, 2017 WL 1169667, at *4 (internal quotation mark omitted) (quoting *Patane*, 508 F.3d at 113). The totality of circumstances set forth in the Amended Complaint make plain that Plaintiff experienced an

unfortunate, offensive workplace incident. They do not, however, establish that Plaintiff's work environment was hostile in violation of Title VII.

The Court considers first Pacheco's e-mail attaching the video, which e-mail is the genesis of Plaintiff's suit and "[t]he essence of Plaintiff's" Amended Complaint. (Pl. Opp. 1). The Court credits completely Plaintiff's allegation that she "was highly offended by the video." (AC ¶ 15). Pacheco should not have sent it. But the Second Circuit has affirmed — repeatedly — that "[f]or racist comments, slurs, and jokes to constitute a hostile work environment … there must be more than a few isolated incidents of racial enmity." *Aulicino* v. *N.Y.C. Dep't of Homeless Servs.,* 580 F.3d 73, 83 (2d Cir. 2009) (quoting *Schwapp* v. *Town of Avon,* 118 F.3d 106, 110-11 (2d Cir. 1997)); *accord, e.g., Fincher* v. *Depository Trust & Clearing Corp.,* 604 F.3d 712, 724 (2d Cir. 2010); *see also Schwapp,* 118 F.3d at 110 ("As the Supreme Court has stated, 'mere utterance of an … epithet which engenders offensive feelings in an employee' does not sufficiently affect the conditions of employment to implicate Title VII." (internal quotation marks omitted) (quoting *Harris,* 510 U.S. at 21)). Nor does "the sending of a single offensive e-mail … create a hostile work environment." *Curtis* v. *DiMaio,* 46 F. Supp. 2d 206, 213 (E.D.N.Y. 1999) (citing *Owens* v. *Morgan Stanley & Co., Inc.,* No. 96 Civ. 9747 (DLC), 1997 WL 403454, at *2 (S.D.N.Y. July 17, 1997)), *aff'd,* 205 F.3d 1322 (2d Cir. 2000) (unpublished disposition). Plaintiff insists that Pacheco's circulation of the video, standing alone, establishes a cognizable hostile work environment claim. (Pl. Opp. 2). Ample precedent demonstrates that Plaintiff is mistaken.

11

Plaintiff argues, in the alternative, that Pacheco's e-mail cannot be reduced to "a one-time event because it was published to at least 12 or 13 other co-workers." (Pl. Opp. 5). This argument misses its mark: Pacheco sent a single e-mail, attaching a single video in which Staybridge employees used the word "nigger." And that isolated incident, though reprehensible, did not render Plaintiff's work environment hostile within the meaning of Title VII. *Compare Boakye-Yiadom* v. *Laria*, No. 09 Civ. 622 (DRH), 2012 WL 5866186, at *10 n.2 (E.D.N.Y. Nov. 19, 2012) ("While certainly offensive, the single use of the word 'nigger' or any other racial epithet is not enough to establish a hostile work environment claim."), *with Green*, 2017 WL 1208596, at *7 (plaintiff plausibly alleged a hostile work environment claim under the NYSHRL and 42 U.S.C. § 1981, where plaintiff overheard employers make "multiple comments about employees not 'fitting the image of the store' or referring to them as 'monkeys'" (internal quotation marks omitted)).

One more contextual point about Pacheco's e-mail bears mention here. At the time Pacheco e-mailed the video, both she and Plaintiff held management positions at Staybridge. Indeed, many of the recipients of Pacheco's e-mail were managers at Staybridge, a point Plaintiff underscored in her reply-all response when she counseled her co-workers "to be very conscious not to offend anyone especially as managers" and "to be examples to our employees." (E-mails 1). This undercuts Plaintiff's claim that *Staybridge* is

liable for creating a hostile work environment in violation of Title VII.[4]  "An

employer is subject to vicarious liability to a victimized employee for an

actionable hostile environment created by a supervisor with immediate (or

successively higher) authority over the employee."  *Burlington Indus., Inc.* v.

*Ellerth,* 524 U.S. 742, 765 (1998).  But "[e]mployers are not generally liable for

the harassing behavior of a plaintiff's co-workers."  *Hill* v. *Rayboy-Brauestein,*

467 F. Supp. 2d 336, 359 (S.D.N.Y. 2006).  To the contrary, "employers are not

vicariously liable for the actions of a mere co-worker that create a hostile work

environment unless the plaintiff can show that 'the employer knew (or

reasonably should have known) about the harassment but failed to take

appropriate remedial action.'"  *Dawson* v. *Cty. of Westchester,* 351 F. Supp. 2d

176, 188 (S.D.N.Y. 2004) (quoting *Petrosino* v. *Bell Atl.,* 385 F.3d 210, 225 (2d

Cir. 2004)).

Here, just the opposite occurred:  Chiew, Staybridge's General Manager,

knew about Pacheco's e-mail attaching the offensive video, because Pacheco

sent that e-mail to Chiew.  And on the same day Pacheco sent the e-

mail — June 13, 2015 — Chiew and another Staybridge employee spoke to

---

[4]     The Amended Complaint does not clearly state whether Plaintiff brings her Title VII
       claim against both Staybridge and Chiew, although it appears that Plaintiff brings that
       claim against Staybridge alone.  (*Compare* AC ¶ 22 (alleging in support of Title VII claim
       that "Defendant Staybridge engaged in these discriminatory practices[.]"), *with id.* at
       ¶ 25 (alleging in support of NYSHRL claim that "Defendants have discriminated against
       Plaintiff[.]")).  To be clear:  Chiew cannot be liable under Title VII, because "[t]here is no
       individual liability under Title VII."  *Gomez* v. *N.Y.C. Police Dep't,* 191 F. Supp. 3d 293,
       302 (S.D.N.Y. 2016).

13

Pacheco about it. Chiew, in other words, "t[ook] appropriate remedial action"

when he learned about an incident of harassment at Staybridge. *Dawson*, 351

F. Supp. 2d at 188 (internal quotation mark omitted) (quoting *Petrosino*, 385

F.3d at 225). Thus, even if Pacheco's act of circulating a racist video

constituted actionable harassment under Title VII, the Amended Complaint

does not suggest that Staybridge would be liable for it.

Plaintiff concedes that the other events that form the basis of her

Amended Complaint — Chiew's e-mail to Plaintiff, and Chiew's subsequent

iciness towards Plaintiff — "standing alone or together," are not "sufficient to

establish a hostile work environment claim." (Pl. Opp. 2). Instead, she

suggests that Chiew's treatment of Plaintiff, viewed alongside Pacheco's e-mail,

created a hostile work environment. (*Id.*). The Court is mindful that it must

assess "the totality of the circumstances" when evaluating Plaintiff's hostile

work environment claim. *Littlejohn*, 985 F.3d at 321. Here, those

circumstances confirm that Plaintiff's work environment was not hostile.

Chiew's e-mail to Plaintiff, and his subsequent brusqueness towards

Plaintiff, were facially neutral reactions to Plaintiff's workplace behavior. It is

true that "[f]acially neutral incidents may be included … among the 'totality of

the circumstances' that courts consider in any hostile work environment claim,

so long as a reasonable fact-finder could conclude that they were, in fact,

based on" a plaintiff's protected characteristic. *Kaytor* v. *Elec. Boat Corp.*, 609

F.3d 537, 547 (2d Cir. 2010) (quoting *Alfano* v. *Costello,* 294 F.3d 365, 378 (2d

Cir. 2002)).  But Plaintiff gives the Court no reason to conclude that Plaintiff's race played a role in Chiew's treatment of her.

More elementally, the Amended Complaint does not explain why a reasonable person would believe that Chiew's treatment of Plaintiff made Plaintiff's work environment worse.  Chiew did not admonish Plaintiff for expressing offense at Pacheco's video.  He took issue with the fact that Plaintiff did so *publicly*.  Chiew's reprimand of Plaintiff, moreover, was private:  He did not criticize Plaintiff in front of her peers, but instead wrote a direct e-mail to Plaintiff and one other Staybridge employee.  And although Chiew initially ordered Plaintiff to apologize to Pacheco, he did not push back when Plaintiff refused to do so.

As for the fact that Chiew stopped saying "good morning" and "good evening" to Plaintiff, it is axiomatic "that Title VII is not a 'general civility code.'" *Beale* v. *Mount Vernon Police Dep't*, 895 F. Supp. 2d 576, 586 (S.D.N.Y. 2012) (internal quotation marks omitted) (quoting *Burlington N. & Santa Fe Ry. Co.* v. *White*, 548 U.S. 53, 68 (2006)).  Nor does "Title VII … prohibit employers from maintaining nasty, unpleasant workplaces[.]"  *Hiralall* v. *Sentosacare, LLC*, No. 13 Civ. 4437 (GBD), 2016 WL 1126530, at *10 (S.D.N.Y. Mar. 18, 2016) (quoting *Krasner* v. *HSH Nordbank A.G.*, 680 F. Supp. 2d 502, 513 (S.D.N.Y. 2010)), *appeal dismissed* (May 12, 2016).  And because nothing in the Amended Complaint suggests that Chiew ceased exchanging pleasantries with Plaintiff because of her race, Chiew's behavior likewise does not support Plaintiff's Title VII claim.

In sum, the totality of circumstances surrounding Pacheco's e-mail and Plaintiff's subsequent interactions with Chiew establish that Staybridge did not create a hostile work environment. And because Plaintiff has not requested leave to further amend her Title VII claim, the Court dismisses that claim with prejudice. *See Gallop* v. *Cheney*, 642 F.3d 364, 369-70 (2d Cir. 2011).

**B.   The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's NYSHRL and NYSHRL Claims**

### 1.   Applicable Law

Under 28 U.S.C. § 1367(c)(3), a district court has discretion to "decline to exercise supplemental jurisdiction over" pendent state-law claims "if … the district court has dismissed all claims over which it has original jurisdiction." "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of [i] judicial economy, [ii] convenience, [iii] fairness, and [iv] comity,' in deciding whether to exercise jurisdiction." *Kolari* v. *N.Y.- Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ.* v. *Cohill*, 484 U.S. 343, 350 (1988)); *accord United Mine Workers of Am.* v. *Gibbs*, 383 U.S. 715, 726-27 (1966); *cf. Benjamin* v. *N.Y.C. Dep't of Health*, 144 F. App'x 140, 142 (2d Cir. 2005) (summary order) ("In assessing whether § 1367(c)(3) discretion has been appropriately exercised, this Court looks mainly to whether a District Court reached unsettled issues of state law and to whether disposition was supported by *significant* considerations of judicial economy." (emphasis added)). Those factors generally tilt toward dismissing state-law claims: "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the

16

pendent jurisdiction doctrine ... will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7; *see also Motorola Credit Corp.* v. *Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) ("[O]ur Court has held, as a general proposition, that 'if [all] federal claims are dismissed *before trial* ..., the state claims should be dismissed as well.'" (emphasis in original) (quoting *Castellano* v. *Bd. of Trustees,* 937 F.2d 752, 758 (2d Cir. 1991)).

### 2. Analysis

Because the Court has dismissed Plaintiff's Title VII claim, only her NYSHRL and NYCHRL claims remain. And because all four of the *Gibbs* factors suggest that the Court should decline supplemental jurisdiction over those claims, the Court will dismiss them.[5]

First, judicial economy counsels in favor of dismissing Plaintiff's NYSHRL and NYCHRL claims, given this case's limited record and short procedural history. *See Chenensky* v. *N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 392 (S.D.N.Y. 2013). Second, the Court can see nothing inconvenient about requiring the parties to litigate their dispute in New York state court. Third, declining jurisdiction would not "prejudice the parties," *id.*, given that they

---

[5]  Defendants urge the Court to exercise supplemental jurisdiction over Plaintiff's NYSHRL (but not her NYCHRL) claim. (Def Br. 8 n.3). But the case Defendants cite in support of that argument — *Rivera* v. *Rochester Genesee Regional Transportation Authority*, 743 F.3d 11 (2d Cir. 2014) — does not address 28 U.S.C. § 1367(c)(3). Rather, the text of *Rivera* that Defendants cite quotes directly from 28 U.S.C. § 1367(c)(1), (2), and (4), which provide analytically distinct grounds for district courts to decline supplemental jurisdiction over pendent state claims. (Def. Br. 8 n.3 (quoting *Rivera*, 743 F.3d at 28)). 28 U.S.C. § 1367(c)(3) and case law interpreting it, in contrast, confirm that supplemental jurisdiction is not called for here.

have thus far invested limited time litigating this case.  And finally, comity

interests militate in favor of declining jurisdiction:  Plaintiff seeks relief under

the NYSHRL and the NYCHRL, both of which protect the rights of New York

workers, and both of which provide for more expansive liability than Title VII.

*See Emmanuel* v. *Cushman & Wakefield, Inc.*, No. 13 Civ. 2894 (GHW), 2015

WL 5036970, at *9-10 (S.D.N.Y. Aug. 26, 2015) (declining supplemental

jurisdiction over plaintiff's NYCHRL claim after dismissing Title VII claims, in

part because of "the NYCHRL's uniquely broad and remedial purposes," and

noting that "courts in this District frequently decline to exercise supplemental

jurisdiction over NYCHRL claims" (alterations and citation omitted)); *Lioi* v.

*N.Y.C. Dep't of Health & Mental Hygiene*, 914 F. Supp. 2d 567, 594-95

(S.D.N.Y. 2012) (declining supplemental jurisdiction over plaintiff's NYSHRL

and NYCHRL claims after dismissing Title VII claims and noting that the

NYSHRL, unlike Title VII, allows for "supervisory liability").

Here, "Plaintiff['s] federal-law claims [have been] eliminated on a motion

to dismiss, prior to the investment of significant judicial resources, and [the

Court] can discern no extraordinary inconvenience or inequity occasioned by

permitting the claims to be refiled in state court where they will be afforded a

'surer-footed reading of applicable law.'"  *Kolari*, 455 F.3d at 123-24 (quoting

*Gibbs*, 383 U.S. at 726).  The Court accordingly declines supplemental

jurisdiction over Plaintiff's NYSHRL and NYCHRL claims, and both claims are

dismissed without prejudice to their refiling in state court.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      June 20, 2017
               New York, New York

                                    KATHERINE POLK FAILLA
                                United States District Judge